**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryce D. Jones,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-02567-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Bryce Jones's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, "Pl.'s Br.") and Defendant Social Security Administration Commissioner's Opposition (Doc. 11, "Def.'s Br."). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now affirms the Administrative Law Judge's decision (R. at 15–26) as upheld by the Appeals Council (R. at 1–3).

**I.  BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on August 13, 2012 for a period of disability beginning September 15, 2010. (R. at 159.) Plaintiff's claim was denied initially on March 21, 2013 (R. at 159), and on reconsideration on September 30, 2013 (R. at 159). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on October 15, 2014. (R. at 159.) On February 25, 2015, the ALJ denied

Plaintiff's Application. (R. at 167.) On July 14, 2016, however, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. (R. at 174–75.)

Subsequently, Plaintiff testified at a second hearing held before an ALJ on April 17, 2017. (R. at 15.) On August 30, 2017, the ALJ denied Plaintiff's Application. (R. at 15–26.) On June 16, 2018, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On August 14, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: lumbar degenerative disc disease; bilateral shoulder degenerative joint disease and rotator cuff syndrome; status post surgery on right shoulder; myofascial pain syndrome; pes planus; left wrist sprain and pain; leukocytosis; hyperlipidemia; and hyperglycemia. (R. at 18.) Ultimately, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404." (R. at 19.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)," with certain exceptions, in a role such as furniture rental clerk or usher. (R. at 19–20, 26.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.  ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ failed to properly weigh the medical opinion evidence; and (2) the ALJ erred by discrediting Plaintiff's pain and symptom testimony. (Pl.'s Br. at 1.)

**A.  The ALJ Did Not Err in Weighing the Opinions of Plaintiff's Treating Physicians**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ assigned "partial weight" to the opinions of Drs. Ryan and Steingart, Plaintiff's treating physicians. (R. at 23.) For the following reasons, the ALJ did not err in weighing their opinions.

The ALJ provided specific and legitimate reasons for assigning only partial weight to the opinion of Dr. Ryan. On October 31, 2012, Dr. Ryan opined that Plaintiff could not push, pull, kneel, bend, or stoop during an eight-hour workday. (R. at 523.) The ALJ—in finding Plaintiff could frequently push and pull with his upper and lower extremities, as well as occasionally stoop, kneel, and crouch (R. at 19–20)—cited evidence in the record in which

Plaintiff both reported he had achieved better motion and mobility with chiropractic care and demonstrated "[g]ood grip strength" as well as "[g]ood strength [and] good endurance" when toe and heel walking (R. at 821–22). Accordingly, the ALJ did not err in assigning partial weight to the opinion of Dr. Ryan.[1]

Similarly, the ALJ provided specific and legitimate reasons for assigning partial weight to the opinion of Dr. Steingart. At times throughout the relevant period, Dr. Steingart recommended Plaintiff "avoid all overhead activity" as a result of an injury in his right shoulder, and on October 8, 2014, Dr. Steingart opined that during an eight-hour workday Plaintiff would experience severe pain symptoms in his back frequently, interfering with his attention and concentration. (R. at 688, 690.) Although the ALJ acknowledged that Plaintiff's ability to reach with his upper extremities was limited as a result of shoulder impairments, the ALJ found Plaintiff could occasionally reach with his right arm and had the RFC to perform light work. (R. at 19–20.) In support of these conclusions, the ALJ cited evidence that the symptoms in Plaintiff's right shoulder improved after Plaintiff had surgery on the shoulder in 2012. (R. at 21.) Indeed, Plaintiff testified to the same effect, specifically stating that his symptoms improved "for the most part" after surgery. (R. at 65.) The ALJ also cited evidence that Plaintiff's posture and gait was normal and evidence that Plaintiff was able to toe and heel walk on command, undermining Dr. Steingart's conclusion that Plaintiff experienced severe pain in his back frequently. (R. at 24.) Finally, in May 2013, Dr. Steingart, in response to Plaintiff's request that he provide documentation to Plaintiff stating that Plaintiff could not work, noted that he did not have "enough information to suggest [Plaintiff could not work]." (R. at 823.) Accordingly, the ALJ did not err in assigning partial weight to the opinion of Dr. Steingart.

---

[1] In addition to citing medical evidence in the record, the ALJ supported his decision to assign partial weight to the opinion of Dr. Ryan by noting that because Dr. Ryan had only treated Plaintiff for approximately five months, he did not have a longitudinal history with Plaintiff. (R. at 23.) Even if this was not a valid reason for assigning partial weight to Dr. Ryan's opinion, as Plaintiff argues (Pl.'s Br. at 12–13), such error was harmless.

**B.  The ALJ Gave Sufficient Reasons to Discount Plaintiff's Pain and Symptom Testimony**

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1281)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Here, the ALJ discredited Plaintiff's pain and symptom testimony because it was inconsistent with Plaintiff's daily activities (R. at 20) and the relief Plaintiff appeared to obtain from medication (R. at 22). These reasons were sufficient to reject Plaintiff's testimony.

Plaintiff's daily activities were incompatible with the severity of the symptoms Plaintiff alleged. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff alleged that as a result of pain in his lower back, he could not stand more than twenty minutes, bend over to work, or lift auto parts into place. (R. at 356.) Further, he alleged pain in his shoulders "ma[d]e a hard job almost impossible." (R. at 356.) Despite these allegations, Plaintiff mowed the lawn once a week, which he testified took about "a half-hour," depending on how many times he was required to stop and empty the bag. (R. at 113, 356.) Plaintiff also prepared his own meals; drove his car and

scooter; shopped for groceries and clothes; built an engine mount for a friend; and made minor repairs to his sister's car. (R. at 20, 87–88.) These activities are incompatible with the severity of the symptoms Plaintiff alleged.

Additionally, Plaintiff reported that medication alleviated his pain and increased his functioning and quality of life. (R. at 503, 505, 743, 807.) Accordingly, the ALJ gave sufficient reasons to discount Plaintiff's pain and symptom testimony.

## IV. CONCLUSION

Because the Court finds that the ALJ did not err in discrediting the opinions of Plaintiff's treating physicians or Plaintiff's testimony, it need not consider whether this matter should be remanded for further consideration or computation of benefits. Based on the reasons explained above, the Court affirms the denial of Plaintiff's benefits.

**IT IS THEREFORE ORDERED** affirming the August 30, 2017 decision of the ALJ (R. at 15–26), as upheld by the Appeals Council on June 16, 2018 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of July, 2019.

Honorable Steven P. Logan
United States District Judge